Steve OLGIN, Jr., Petitioner-Appellant,

v.

Ed DARNELL, et al.,
Respondent-Appellee.

No. 80–2241
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 18, 1981.

Paul N. Kenworthy, Odessa, Tex., for petitioner-appellant.

Leslie C. Acker, Midland, Tex., for respondent-appellee.

Before CLARK, Chief Judge, RUBIN and SAM D. JOHNSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In this § 1983 action, Steve Olgin, Jr. seeks damages for injuries allegedly inflicted on him while he was confined as a pretrial detainee in the Midland County Jail. Concluding that the district judge's findings of fact were not clearly erroneous, Fed.R. Civ.P. 52, and that he correctly applied the law to the facts as found, we affirm his judgment dismissing the action.

The district judge found that, during the month of August 1974, Olgin was a pretrial detainee confined in Cell Block 1 in the Midland County Jail. He and Felix Hernandez, a fellow prisoner, assaulted and injured a third prisoner. Thereafter, Olgin was transferred to Single Cell No. 8 without prior written notice or a hearing, and was confined there for about two weeks.

Cell 8 was designed for one person. It contained a bed, commode, water basin, water drinking fountain, shower, mirror, and sufficient space to allow the occupant to stand, walk about, and exercise. It was adequately illuminated and neither filthy nor cold. Olgin was fed adequate meals. For one day, he was given no clothing but

underwear, and was denied legal materials and a bed mattress because he had threatened to burn the jail down. Thereafter he was provided adequate clothing as well as the basic elements of hygiene. He was neither physically or verbally abused, nor denied access to his lawyers. Although the district judge made no express finding concerning return of Olgin's property, the same witnesses whose testimony he credited in other matters testified that all of Olgin's personal property was eventually returned to him.

The court, therefore, concluded that Olgin's confinement was neither cruel and unusual punishment, violative of the eighth-fourteenth amendment prohibition, nor an infringement of his constitutional rights to free speech, counsel, and due process. The judge found that the restrictions placed on Olgin were neither arbitrary nor purposeless but were to insure the safety of other prisoners.

■ Olgin's brief urges, in effect, that these findings were incorrect because there was evidence to the contrary, as indeed there was. A court of appeals has neither permission nor prerogative to reappraise the credibility of witnesses. *Western Beef, Inc. v. Compton Investment Co.*, 611 F.2d 587, 590 (5th Cir. 1980); Fed.R.Civ.P. 52(a).

The other issue raised by Olgin on appeal is that his confinement and punishment without a hearing violated his due process rights.[1] The resolution of this claim is controlled by the Supreme Court's opinion in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Federal pretrial detainees alleged in that case that various conditions of their confinement violated their constitutional rights.[2] The Supreme Court recognized that punishment of a pretrial detainee prior to an adjudication of guilt infringed the detainee's constitutional right to due process of law. *Id.* at 535, 99 S.Ct. at 1872, 60 L.Ed.2d at 465–66; *Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir.) (en banc), *cert. dismissed*, —— U.S. ——, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). Therefore, the Court held that, "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether these conditions amount to punishment of the detainee." *Id.* at 535, 99 S.Ct. at 1872, 60 L.Ed.2d at 466.

■ Olgin argues that the removal of his clothes for one day amounted to punishment. He relies on the testimony of Chief Jailer Ivy:

BY MR. KENWORTHY (attorney for Steve Olgin)

Q. Mr. Ivy, you indicated that placing Mr. Olgin in the single cell was not in any way punishment or punitive, is that correct?

A. That is correct.

Q. If it wasn't punishment or punitive why were his clothes taken?

A. Because of the possibility of fire.

Q. That is your customary procedure, to take their clothes when there is a possibility of fire?

A. Well, you take, you always strip them all the way down and then if they are still irritated and everything we just keep their clothes that night to let them

---

1. In the trial court, Olgin alleged in addition to a violation of his due process rights that his treatment constituted cruel and unusual punishment, a violation of his first amendment rights because he was not permitted to attend a religious group meeting on a single day immediately following the assault, and a denial of his right to counsel. These contentions were not raised in this appeal, however, so we need not pass on them. *Mayberry v. Davis*, 608 F.2d 1070, 1071–72 (5th Cir. 1979); *Gorham v. Wainwright*, 588 F.2d 178, 179 n.2 (5th Cir. 1979).

2. The pretrial detainees challenged several practices: housing two inmates in a single cell; prohibiting inmates from receiving hardcover books unless mailed directly from the publisher or a bookstore; prohibiting inmates from receiving packages of food and personal items from outside the institution; searching the body cavities of inmates following contact visits; and requiring inmates to remain outside their rooms during inspections by institution officials, 441 U.S. at 530, 99 S.Ct. at 1868, 60 L.Ed.2d at 462.

 

understand where they was at and what they had to do.

Q. So it was in a sense punitive, show them it was serious business, isn't that right?

A. Well, maybe you could call it that. Ivy's testimony at this stage of his examination cannot be considered alone. He testified on direct examination that Olgin's clothes were taken from him, "[b]ecause he was still mad, and from the disturbance and talking about starting fires and things like that." Taken as a whole, the testimony explains that the prisoner was stripped as part of a procedure designed not only to isolate him but to restore him to a rational state. Although there might be a punitive element in the event from the prisoner's point of view, the purpose was not punishment and the taking of the prisoner's clothing cannot be viewed in isolation. Under the circumstances, depriving Olgin of his clothes for one day was not punishment in the constitutional sense because it was rationally related to a legitimate nonpunitive governmental purpose and was not excessive in relation to that purpose. *Id.* at 561, 99 S.Ct. at 1886, 60 L.Ed.2d at 483. Furthermore, "the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inferences that such restrictions are intended as punishment." *Id.* at 540, 99 S.Ct. at 1875, 60 L.Ed.2d at 469.

Alternatively, *Bell v. Wolfish* holds that a court may *infer* that a restriction or condition placed on pretrial detainees constitutes punishment if it is arbitrary or purposeless. *Id.* at 539, 99 S.Ct. at 1874, 60 L.Ed.2d at 468. We affirm the district judge's conclusion that the restrictions and conditions placed on Olgin were not arbitrary or purposeless. The steps taken by the jailers were reasonably related to a legitimate governmental objective—calming the participants in the stabbing, restoring order, and protecting the inmates from the fire hazard threatened by Olgin. Jailers are not obliged to await riots or fires in jail, or to suffer repeated assaults on other inmates before taking preventive action; indeed, they would be derelict if, having the warning of violent action and the threat of arson, they awaited repetition of mayhem or fulfillment of the threat before responding.

Considering both the circumstances requiring prompt action, and the limited nature of the segregative and partially punitive measures taken against Olgin, we find no denial of due process.

For these reasons, the judgment is AFFIRMED.