Henry SAMPSON, Petitioner-Appellee,

v.

John T. KING, Secretary of Louisiana Department of Corrections, and Ross Maggio, Jr., Warden, Louisiana State Penitentiary, Respondents-Appellants.

No. 82–3152.

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 14, 1982.

J. Marvin Montgomery, Asst. Atty. Gen., Dept. of Justice, Baton Rouge,. La., for respondents-appellants.

Henry Sampson, pro se.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

CLARK, Chief Judge:

Henry Sampson, an inmate at Louisiana State Penitentiary in Angola, Louisiana, brought this § 1983 action against C. Paul Phelps, former Secretary of the Louisiana Department of Corrections, Frank Blackburn, former Warden at Angola, and two correctional officers. Sampson claimed that he was injured by Parathion, a pesticide used by Angola in its farming operations. The case was tried by consent before a United States Magistrate. The magistrate dismissed Sampson's complaints against the two correctional officers, but granted judgment against the Secretary and the Warden for $250.00. He also enjoined the defendants from further use of Parathion. The Secretary and the Warden appeal from that judgment. We reverse.

Angola is a maximum security prison situated on approximately 18,000 acres of land. Crops are grown on a large portion of that land. Airplanes and tractors spray those crops several times a year with pesticides, herbicides and defoliants. One of the pesticides used was Parathion. Many Angola inmates, including Henry Sampson, are regularly assigned to work in the fields.

In his complaint, Sampson alleged that his exposure to Parathion constituted cruel and unusual punishment. Sampson alleged that he came into contact with Parathion as a result of overhead spraying by cropdusters. The magistrate found that there was no support for this allegation. The record strongly supports this conclusion. Prisoners and correctional officers assigned to work in the fields joined in testifying that they had never been sprayed. Angola's normal practice was to spray in areas far removed from where the inmates were working. If the wind was blowing strongly enough to cause dispersion, no spraying was permitted.

Sampson also argued that it was cruel and unusual to force him to work in fields that had recently been sprayed with Parathion. The magistrate found that Angola officials normally waited two or three days before assigning inmates to work in such fields. He also found no evidence to support Sampson's claim that field work had caused him to come into contact with Parathion. Despite these findings, he went on to find that "it is entirely possible that petitioner and other inmates could come into contact with this chemical by entering a sprayed field, after the two to three day safety delay now employed at the penitentiary." Based on this conjecture, the magistrate enjoined the Angola officials from any further use of Parathion.

Sampson also argued that he was subjected to cruel and unusual punishment by being forced to work in a chemical storage area. The magistrate found that, while Sampson was working in the area, he accidently fell into a puddle of pesticide. As a result, Sampson became nauseated, dizzy, and had watery eyes. The magistrate concluded that Sampson "was forced to do potentially hazardous work without proper training, supervision, or clothing." He also concluded that the chemicals were improperly stored in "rusted, open, and in many cases nonlabelled cans." Because Sampson's injuries did "not seem to be significant," he was awarded $250.00, with each defendant individually liable for one half the amount.

■ The Eighth Amendment protects all prisoners from cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 290–291, 50 L.Ed.2d 251 (1976). The role of the federal courts is to enforce that constitutional standard without assuming superintendence of jail administration. *Jones v. Diamond,* 636 F.2d 1364, 1368 (5th Cir.1981) (en banc), *cert. denied,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1982). This policy of minimum intrusion is particularly important when a state prison system is involved. *Ruiz v. Estelle,* 679 F.2d 1115, 1145 (5th Cir.1982); *Williams v. Edwards,* 547 F.2d 1206, 1212 (5th Cir.1977).

■ Prison conditions can be so bad that it is cruel and unusual punishment to force inmates to endure them. *Gates v. Collier,* 501 F.2d 1291, 1301 (5th Cir.1974). In determining whether to uphold an eighth

amendment challenge to prison conditions, the court must consider whether the totality of the circumstances violates "contemporary standards of decency." *Rhodes v. Chapman,* 452 U.S. 337, 345–50, 101 S.Ct. 2392, 2398–2400, 69 L.Ed.2d 59 (1981); *Stewart v. Winter,* 669 F.2d 328, 335–36 (5th Cir.1982); *Jones v. Diamond,* 636 F.2d at 1368; *Cerrella v. Hanberry,* 650 F.2d 606, 607 (5th Cir.1981), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1982). The individual judge must not apply his own subjective view of what is cruel and unusual. Rather, his judgment "should be informed by objective factors to the maximum possible extent." *Rhodes v. Chapman,* 452 U.S. at 345, 101 S.Ct. at 2398; *Rummel v. Estelle,* 445 U.S. 263, 275, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980); *Ruiz v. Estelle,* 679 F.2d at 1138.

■ In general, the state has a responsibility to protect the safety of its prisoners. *Streeter v. Hopper,* 618 F.2d 1178, 1182 (5th Cir.1980); *Smith v. Sullivan,* 553 F.2d 373, 380 (5th Cir.1977). In operating a prison, however, the state is not constitutionally required to observe all the safety and health standards applicable to private industry. *Ruiz,* at 1159. Nor is it bound by the standards set by the safety codes of private organizations. *Bell v. Wolfish,* 441 U.S. 520, 543 n. 27, 99 S.Ct. 1861, 1876 n. 27, 60 L.Ed.2d 447 (1979). Standards suggested by experts are merely advisory. *Bell,* at 543 n. 27, 99 S.Ct. at 1876 n. 27; *Ruiz,* at 1149–50. A federal court required to gauge the conduct of state officials must use minimum constitutional standards as the measure.

■ The magistrate erred in concluding that Sampson's work with Parathion constituted cruel and unusual punishment. No showing was made that Parathion is not regularly used by private farmers engaged in the sort of agriculture practiced by the prison. Prison officials should not be held to a higher standard of care than that practiced by responsible farmers in the surrounding agricultural community. A prison farm which adheres to the reasonable customs and usages of the surrounding area cannot be said to be imposing cruel and unusual punishment. The magistrate's reliance on two magazine articles which criticized Parathion was misplaced. The record contains no indication that the articles were known to prison officials or accepted in the agricultural community as articulating minimum standards for safe use. Nor did the proof establish that Parathion has been banned by the Food and Drug Administration or the Environmental Protection Agency. For all the proof shows, Parathion may be a beneficial chemical commonly used throughout the country. The magistrate's injunction prohibiting the further use of Parathion is reversed as a clear abuse of discretion.

■ In their answer, the Secretary and the Warden specifically pled qualified immunity from liability for money damages. Nevertheless, the magistrate failed to consider the issue of immunity before holding them liable for $250.00. This was error. The record clearly establishes that the officials were immune from liability for money damages in this case. We therefore reverse and dismiss Sampson's damage claim against the prison officials.

■ "Immunity is a corollary of discretion." *Bogard v. Cook,* 586 F.2d 399, 413 (5th Cir.1978), *cert. denied,* 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979). Qualified immunity can only exist where the defendant official is required to exercise some modicum of official discretion. *Saldana v. Garza,* 684 F.2d 1159, 1162 (5th Cir.1982); *Williams v. Treen,* 671 F.2d 892, 896 (5th Cir.1982) (U.S.app.pndg.); *Jackson v. Mississippi,* 644 F.2d 1142, 1145 (5th Cir.1981). The magistrate specifically found that the Secretary and the Warden were discretionary officers, and that formulating policies with regard to the handling of pesticides was within the scope of their discretionary authority. When an official who has pled immunity shows that he acted within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the defendant's conduct violated clearly established law. *Saldana v. Garza,* 684 F.2d at 1163.

Officials are shielded from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Saldana,* 684 F.2d at 1163. The focus is on the objective legal reasonableness of an official's acts. Unless the § 1983 plaintiff can establish that the defendant officials have violated clearly established law, his claim for damages must be dismissed. *Saldana,* at 1164. *See Williams,* at 896; *Dilmore v. Stubbs,* 636 F.2d 966, 968 (5th Cir.1981); *Barker v. Norman,* 651 F.2d at 1125–26; *Bogard v. Cook,* 586 F.2d at 411.

The Secretary and the Warden did not violate clearly established law. The regulations cited by the magistrate, 40 C.F.R. § 165.10, merely *recommend* procedures for the handling of pesticides. The published procedures expressly provide that they are mandatory only for Environmental Protection Agency personnel engaged in the handling of such chemicals. 40 C.F.R. § 165.-2(d). No clearly established law prohibits the prison from assigning inmates to work in a pesticide storage area, or requires the use of protective masks or special clothing to do that work. No showing was made that the methods followed by the prison work force differed significantly from those in common use in the surrounding agricultural community. Therefore, the Secretary and the Warden are immune from liability for any injuries resulting from this practice. Sampson's claim must be dismissed.

The magistrate's judgment granting an injunction against further use of Parathion is REVERSED and judgment is rendered here in favor of the Secretary and the Warden. Sampson's claim for money damages against the Secretary and the Warden is

DISMISSED.