Walter BURNETTE, Jimmie Graves, Nester L. Sosa, Joseph Bradberry, Michael Glover, Mark Ford, Dale George, Wortham J. Jones, Billy McLeod, Roger Yates, Roy Collins, Joseph Casbon, William McRae

v.

C. Paul PHELPS, Frank Blackburn, Warden, Hilton, Deputy Warden, H.D. Byargeon, Col., James E. Teer, Major, Edward Cornish, Camp A, Steve Weber, Lt., William Neely, Sgt., Richard Marks, Lt., Allen C. Gientz, Lt., Three Unknown Agents of Shakedown Crew, Lionel Williams, Sgt., Ralph Carter, Dietician, President, C & S Securities, Inc., Allen McNeal, Cadet.

Civ. A. No. 81–804–A.

United States District Court,
M.D. Louisiana, Division "A".

Nov. 18, 1985.

Walter Burnette, Jimmie Graves, Nester L. Sosa, Joseph Bradberry, Michael Glover, Mark Ford, Dale George, Wortham J. Jones, Billy McLeod, Roger Yates, Roy Collins, Joseph Casbon, William McRae, in pro per.

William J. Guste, Atty. Gen., Joseph Erwin Kopsa, Asst. Atty. Gen., Corrections Section Louisiana Dept. of Justice, Baton Rouge, La., for defendants.

## JOHN V. PARKER, Chief Judge.

This matter is before the court on cross motions for summary judgment brought by plaintiff Walter Burnette and on behalf of the defendant officials and employees of the Louisiana Department of Corrections, namely: C. Paul Phelps, Frank Blackburn, Hilton Butler, H.D. Byargeon, James E. Teer, Edward Cornish, Steve Weber, William Neely, Richard Marks, Allen C. Gientz, Lionel Williams, Ralph Carter and Allen McNeal (although service had been returned unexecuted on McNeal). No other plaintiff of the remaining eleven plaintiffs has complied with the United States Magistrate's order, dated June 3, 1985, requiring cross motions for summary judgment. Defendant "President, South Central Bell," was previously dismissed from this action; defendants "three unknown agents of shakedown crew" and "President, C & S Securities, Inc." have not been served with this action.

Thirteen pro se inmates at Louisiana State Penitentiary filed this action pursuant to 42 U.S.C. § 1983 against the defendants alleging a litany of deprivations of purported rights and privileges in Camp A where plaintiffs were then confined. In his motion for summary judgment, plaintiff Burnette states that only he and plaintiff Jimmie Graves remain in Camp A. Plaintiff further states that plaintiffs Joseph Bradberry, Michael Glover, Roger Yates, Roy Collins, Joseph Casbon and William McRae have been transferred to other units within Angola. The record confirms that Dale George has been transferred to another institution; Mark Ford, Wortham J. Jones and Bill McLeod have been discharged; and plaintiff Nester L. Sosa was voluntarily dismissed from the action.

Plaintiffs, who unsuccessfully sought to pursue their claims in the form of a class action, complain that defendants are violating their constitutional rights by requiring the inmates to live in allegedly unclean vermin infested quarters where plaintiffs are denied educational and rehabilitative programs, larger lockers, designated writ writing areas and towel racks for wet towels. Plaintiffs also allege that laundry service and recreational space are less than adequate; that occasionally hygenic supplies have not been provided and that there is only one small mirror in the dormitory

bathroom for the use of sixty men. Other alleged constitutional deprivations include: restrictions which prohibit colored underclothes and personal property items which are allowed in other state prisons and rules which hamper free exchanges of speech with certain persons in the dining hall. Plaintiffs also complain that they are restrained with "black boxes" when transported from their quarters; that they are subjected to strip searches and exposure to homosexuals and epileptics on their tier and that they are sometimes harassed by the corrections officers in retaliation for lawsuits. Plaintiffs' complaints regarding the costs and types of telephone service were previously dismissed.

Although the record reveals that plaintiff Burnette stipulated to the dismissal of several of his claims and dismissal of one defendant, each allegation will be considered so as to finally adjudicate each issue as to all complaints currently assigned to Camp A, the matter being moot as to all others.

Defendants now move for summary judgment on the grounds that there are no facts showing violations of constitutional rights and there are no material issues of fact in dispute. In support of the motion, defendants have submitted a statement of undisputed facts; an investigative report and affidavit by Mariana Leger, affidavits by Joseph Lee and Roger Thomas; true copies of departmental policies, regulations, internal memoranda and food service inspection reports.

In support of his motion for summary judgment, plaintiff Burnette has submitted his own affidavit and an affidavit by inmate Arthur Mitchell, both of which reaffirm the original allegations. As additional support, plaintiff has attached a copy of proposed bylaws for the "Christian Fellowship Finance Committee" and a copy of the voluntary motion to dismiss filed by Nestor L. Sosa.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c), Fed.R.Civ.P. A review of the record reveals that plaintiffs have failed to contest any of the evidence presented by defendants regarding the prison rules, regulations, policies or conditions.

■ Prison officials are accorded broad discretion in the administration of prisons; it is not within the discretion of the courts to manage prisons, but to intervene only in the face of constitutional deprivations. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Ruiz v. Estelle*, 679 F.2d 1115, 1145 (5th Cir.) modified, 688 F.2d 266 (1982); *Sampson v. King*, 693 F.2d 566 (5th Cir.1982). Prison regulations should be sustained unless they are unreasonable and arbitrary. *Sullivan v. Ford*, 609 F.2d 197 (5th Cir.1980); *Hill v. Estelle*, 537 F.2d 214 (5th Cir.1976).

■ Plaintiffs' allegations regarding the lack of educational or rehabilitative programs in Camp A do not rise to that level. Prisons are not educational institutions; there is no federal constitutional right to participate in a prison educational program, *Newman v. State of Alabama*, 559 F.2d 283 (5th Cir.) (Rehearing and Rehearing En Banc Denied Nov. 7, 1977), although where such programs exist, each prisoner should have impartial, equal access on an objective standard. *Id.*, 559 F.2d 283, 292. It is uncontested that while Camp A has no educational program within the camp, an inmate may participate in self-teaching or correspondence courses or request admittance to a program. *See* affidavit by Mariana Leger. There are no allegations that any plaintiff requested enrollment in any program or was denied the opportunity to further his education while he was confined to Camp A. Plaintiffs' allegations regarding the alleged lack of rehabilitative programs are based on the administration's rejection of a proposed organization, "Christian Fellowship Finance Committee." See proposed bylaws attached to plaintiff's motion for summary judgment. There are no allegations that any plaintiff sought re-

medial benefits of other programs listed in their complaint, "e.g. J.C.'s, Dale Carnegie, A.A." It is undisputed that the warden may approve or disapprove the formation of any inmate organization and that other programs must be coordinated through the Camp A social and athletic club. See affidavit by Mariana Leger and prison memorandum dated September 9, 1985. Considering the broad discretion recognized in administrative matters, this court cannot say that the rejection of an organization founded by inmates, solely according to its bylaws, "to collect and dispense charitable contributions" is an abuse of that discretion.

■ Plaintiffs' next contention, that prison restrictions are violative of the inmates' rights to free speech, are also without merit. While inmates do not completely lose the freedom of speech protected by the First Amendment, see *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), it is well established that lawful incarceration results in the limitation of privileges and rights enjoyed by the ordinary citizen. The limitations presented in this action, where inmates may not freely converse with trustees and other inmates who are not within the immediate vicinity, are not overly restrictive within the confines of the limitations of prison walls.

■ Nor do the allegations that Camp A lockers are smaller than some other lockers or that the institution's policies on personal property, including "white only" underwear, are more restrictive than other state prisons, raise issues of federally protected rights. There is no constitutional mandate that every inmate have identical state issued items or that all of Louisiana's prisons follow completely uniform procedures on personal property; there is simply no constitutional provision guaranteeing an inmate his choice of color in undergarments or to enjoy the use of larger lockers, cassette records, etc. Similarly, the contentions that hygenic supplies are occasionally not provided and that inmates may not hang wet towels on their beds are without merit. The affidavit by Mariana Leger, as well as the complaint, indicates that any depletion of toiletries was of short duration and unintentional. Affiant further states that as of 1982, the prison policy permitted hanging wet towels over the edges of the beds; since plaintiffs do not disagree, the issue of mildewed towels is moot; moreover, the issue is not of constitutional dimension.

■ Plaintiffs also complain that they are compelled to live and dine in small unsanitary quarters which are infested with flies, roaches, rodents, the mentally ill and epileptic inmates. Plaintiffs further complain that the laundry service is poor and the recreation yard inadequate. Prison conditions can be so bad that it is cruel and unusual punishment to force inmates to endure them. *Gates v. Collier*, 501 F.2d 1291, 1301 (5th cir.1974); *Sampson v. King*, supra, 693 F.2d at 568. As plaintiffs' affiant notes, this court has continuing jurisdiction over the state prisons and monitors the conditions in which the inmates are confined, maintaining a constitutional level of conditions in each institution under the "totality of circumstances" constitutionally required. *Rhodes v. Chapman*, 452 U.S. 337, 345–50, 101 S.Ct. 2392, 2398–2400, 69 L.Ed.2d 59 (1981); *Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir.) (en banc), cert. denied 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981); *Williams v. Edwards*, 547 F.2d 1206 (5th Cir.1977). It is undisputed that the administration attempts to control the infestation of insects common to our southern climate and that regular inspections are made of the facility by the health department. See affidavit by Mariana Leger and Inspection Reports. Plaintiffs concede that other repairs have been undertaken, but complain that they are insufficient and burdensome with regard to the lack of restroom facilities in the recreation yard. Considering that plaintiffs' complaints are all of a general nature and are being addressed by the administrators and monitored by inspections by the court, the issues of sanitation and space allotted to the inmates herein presented do not violate "contemporary standards of de-

cency" espoused in *Rhodes, et al,* supra. The complaints that allegedly mentally ill and epileptic inmates reside in their camp are also without merit. While the state has a responsibility to protect the safety of its prisoners, *Sampson v. King,* supra, the wholly speculative allegations that plaintiffs might be endangered by the mere presence of these inmates are insufficient to state a claim under § 1983. *Woodhaus v. Virginia,* 487 F.2d 889 (4th cir. 1973). The record reveals that each inmate is classified according to departmental regulations and that inmates who are determined to be dangerous are isolated from other inmates. It is apparent that plaintiffs have voiced no specific fears and those of a general nature are being controlled by administrative procedures.

■ Plaintiffs' allegations regarding denial of access to the courts include complaints that Camp A was temporarily without an inmate legal assistant; that there is no specific area for preparation of legal documents, nor provisions allowing typing tables in the dormitory; and that notarization of documents is sometimes impeded by harassment. The standards of access to the courts for pro se litigants was set out by the United States Supreme Court in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). In the matter now before the court, it is apparent that defendants have met those standards. Although defendants concede that at one time an inmate counsel assigned to Camp A was temporarily confined to administrative lockdown for disciplinary reasons, plaintiffs do not dispute the rebuttal that a substitute counsel was sent to the camp and that inmates requiring other assistance could contact the director of legal programs or their classification officers. It is undisputed that all inmates who are able to do so may use the prison law library and that those who cannot are permitted to check out law books. The prison authorities are merely required to allow inmates free access to the courts, they are not required to provide twenty-four hour a day service. Nor do plaintiffs allege any set of facts establishing any detriment or prejudice to

pending cases caused by inconveniences associated with noisy surroundings, minor delays in receipt of legal materials or notary services. *Bounds* does not require more than the provisions and assistance undisputedly afforded plaintiffs and evidenced in the record. Any allegations of confiscation of property may be directed to the state courts. *See Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), *Marshall v. Norwood,* 741 F.2d 761 (5th Cir.1984).

■ Plaintiffs' complaints that they are handcuffed with movement restricted by the use of a "black box" over the cuffs when they are transported out of their unit do not constitute cruel and unusual punishment. Unequal use of restraints of prisoners in matters of security was found to fall within the discretion of prison officials. *Fulford v. King,* 692 F.2d 11, 13 (5th Cir. 1982). Although plaintiff Burnette suggests that he has never posed any problems on trips outside the prison, he does not contest the use of the device as a security measure to ensure that there would be "no problems." Since no plaintiff alleges any serious injury due to the extra security measure, the additional impediments to movement do not present a claim of constitutional merit under *Fulford.*

■ In addition to recognizing the need for supplemental restraints, the jurisprudence is uniform that reasonable steps taken to enforce security needs in a prison do not violate a prisoner's constitutional rights: *See Olgin v. Darnell,* 664 F.2d 107 (5th Cir.1981); *McFadden v. Lucas,* 713 F.2d 143 (5th Cir.), cert denied 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983). Prisoners also have no legitimate expectation of privacy and the Fourth Amendment's prohibition of unreasonable searches do not apply in prison cells. *Hudson v. Palmer,* supra, 104 S.Ct. at 3201. Regulation No. 3025, attached to defendants' motion for summary judgment, clearly authorizes general routine searches of tiers during which the inmates may be required to remove their clothing so that the *clothing only*

may be searched. There are no allegations that the searches were overly intrusive or contrary to prison policy; only that the searches were "without probable cause" and embarrassing to the inmates. Since the facts before the court reveal that such searches are authorized and justified in light of the contraband confiscated (See affidavit by Mariana Leger), the shakedowns are a reasonable requirement in the unit as well as in individual cells under *Hudson, Id.*

■ Plaintiffs' specious allegations of rampant homosexuality condoned by corrections officers who often harass and verbally abuse the inmates lack a factual basis and are countermanded by defendants' affidavits and exhibits of prison rules and regulations for both inmates and employees (attachments numbered 11 & 12). Moreover, plaintiffs have not indicated what individual constitutional rights would be violated had there been specified homosexual encounters in their camp, other than their subjective revulsion and disgust which are not actionable under § 1983.

■ Allegations of verbal abuse alone do not present claims under § 1983. "Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." *McFadden v. Lucas,* supra, 713 F.2d at 146; *Johnson v. Glick,* 481 F.2d 1028, 1033, n. 7 (2d Cir.1973). Plaintiffs do not contradict defendants' position that inmates are required to carry their identification cards and duty status slips, subject to "on the spot" production and inspection; implementation of this reasonable rule by security officers cannot be said to be harassment.

■ Plaintiffs also generally complain that corrections officers "often force plaintiff to perform duties not in compliance with the duty status, resulting in frivolous disciplinary reports." Complaint ¶ 26. However, the record shows no factual support for these allegations; nor are there allegations of any physical impairment caused by an order not in compliance with a duty status. *See also* affidavit by Maria-

na Leger regarding additional or alternative job assignments. As defendants point out in brief, there are a variety of jobs which inmates at Angola perform. Some are more desirable than others but inmates do not acquire job security or tenure and they may be required to perform any task for which they are physically fit.

Similarly, there are no specific contentions of denial of due process. An inmate cannot complain that a disciplinary report was unfairly issued for an act he did not commit. *Collins v. King,* 743 F.2d 248 (5th Cir.1984). The disciplinary procedures which are in effect at the Louisiana State Penitentiary were previously approved by this court in *Williams v. Edwards,* supra, and affirmed by the Court of Appeals. Those procedures more than comply with the standards set forth in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Stewart v. Thigpen,* 730 F.2d 1002 (5th Cir.1984). Inasmuch as there is a proper and constitutionally correct disciplinary hearing procedure at the penitentiary, plaintiffs may allege specific dissatisfactions with those results in civil actions. No plaintiff has raised such complaints in this action and none contest defendants' evidence that inmates may occasionally have to perform other than assigned tasks and that disciplinary proceedings follow the procedural rules.

Considering that the complaint and all other pleadings filed in the record as well as the opposition to defendants' motion for summary fail to reveal any violations of federally protected rights, and since plaintiffs have failed to show genuine issue as to any material fact, it is evident that defendants are entitled to judgment as a matter of law. Accordingly, plaintiffs' motion for summary judgment is hereby DENIED and defendants' motion for summary judgment is hereby GRANTED.

Furthermore, since the record reveals that plaintiffs have failed to correctly identify and serve "three unknown agents of shakedown crew" and "President, C & S Securities, Inc." over the course of several years and since the court has determined

that neither the shakedowns nor the use of the restraints presumably manufactured by C & S Securities violated any constitutional rights, these remaining defendants will be dismissed under 28 U.S.C. § 1915(d). There will be judgment in favor of all defendants and against all remaining plaintiffs dismissing this action.