**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-20615

CLIFFORD WEST; DANIEL JOHNSON,

Plaintiffs-Appellants,

versus

SHAWN BLAIR; GEORGE BANKS; JAMES
FERGUSON; TEXAS DEPARTMENT OF
CRIMINAL JUSTICE; E.W. BROCK, Major;
JAY T. MORGAN; GARY JOHNSON;
WAYNE SCOTT,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

(H-99-CV-2262)

May 15, 2001

Before DAVIS, WIENER, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants, Clifford West ("West") and Daniel Johnson ("Johnson"), appeal the

district court's dismissal of their respective claims against the Defendants-Appellees as frivolous

pursuant to 28 U.S.C. § 1915A. For the reasons assigned below, we affirm the district court's ruling.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## FACTUAL AND PROCEDURAL HISTORY

West is incarcerated at the Texas Department of Criminal Justice-Institutional Division ("TDCJ-ID"). He formally worked as a bus floor installer in the Ellis Unit bus repair shop, where his supervisors were Defendant-Appellants James Ferguson, George Banks, and Shawn Blair (collectively "Blair"). On May 25, 1999, he was standing outside of the bus repair shop taking a break when another prisoner, Randy Berry ("Berry"), drove a fork lift over his left foot, breaking several bones.

West sued Blair in the district court alleging that Blair is liable for his injuries because Blair assigned Berry to work in the repair shop area without properly training Berry to use a forklift, failed to conduct effective safety meetings, neglected to inspect the work areas for hazards despite being aware that such hazards existed, ignored an earlier forklift accident involving Berry, and thereafter witnessed Berry's continued poor skills in forklift operation without any intervention. He contends that these actions demonstrate Blair's deliberate indifference. West, who had been granted the right to proceed in forma pauperis ("IFP"), then moved for leave to file an original amended complaint to add Johnson as a plaintiff and to add Johnson's claims against certain prison officials. West moved for an order vacating the IFP order, indicating that Johnson would pay the entire filing fee and requesting the return of excess filing fees.

Johnson was continuously incarcerated at the Ellis Unit from 1977 to 1999, during which time he successfully filed numerous grievances concerning the conditions of his confinement. He is also an experienced pro se litigant whose 1985 class action suit challenging parole procedures resulted in a published opinion regarding prisoner litigation. See Johnson v. Rodriguez, 110 F.3d 299 (5th Cir. 1997). Concerned that his zealous litigation against several wardens and prison officials as well as

2

his success as a "jail house lawyer" prompted Ellis Unit personnel to assign him an incompatible roommate, move him to a transient cell, and ultimately relocate him to another less desirable cell in retaliation for exercising his constitutional right to file lawsuits and prison grievances, Johnson sued Wardens E.W. Brock ("Brock") and Jay T. Morgan ("Morgan") for retaliation. He also named TDCJ-ID Director Gary Johnson ("Gary") and TDCJ Director Wayne Scott ("Scott") as defendants.

The district court dismissed West's federal claims as having no legal basis and declined to exercise jurisdiction over his claims under the Texas Tort Claims Act, see TEX. CIV. PRAC. & REM. CODE § 101.021(a)(1), dismissing these claims without prejudice. The court also dismissed Johnson's retaliation claim, concluding that he "failed to allege facts that would support an actionable claim." Johnson then filed an original and supplemental motion to alter or to amend the judgment pursuant to Fed. R. Civ. P. 59(e), but the district court denied the motion and subsequently directed the clerk to return to West and Johnson any funds in excess of the $150.00 filing fee. West and Johnson now appeal.[1]

DISCUSSION

I.      Standard of Review

We review for abuse of discretion a district court's dismissal of a prisoner's complaint as frivolous. Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999). However, we review a sua sponte dismissal for failure to state a claim under the same de novo standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6). Id.; Black v. Warren, 134 F.3d 732, 733-34 (5th Cir. 1998).

II.     West's Claims

---

[1] As noted by the district court, "West's and Johnson's [underlying substantive] claims are unrelated." But in an effort to adjudicate expeditiously and to use resources efficiently, the court opted not to sever the parties' claims.

West argues that the district court erred by dismissing as frivolous his claims that prison officials were deliberately indifferent to the unsafe working conditions created by allowing Berry, an untrained inmate forklift driver whom West contends had previously run over another inmate's foot, to continue operating forklifts. The district court analyzed West's claim under Eighth Amendment jurisprudence, noting that, in the context of workplace safety, a prisoner seeking to establish a claim must demonstrate the defendants' deliberate indifference to his safety. Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). This showing requires the prisoner to establish that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) drew an inference that such potential for harm existed. Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Thus, a prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk or serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

Regarding West's complaint that Blair was not vigilant in maintaining a safe work environment, we observe that state prisons are "not constitutionally required to observe all the safety and health standards applicable to private industry." Sampson v. King, 693 F.2d 566, 569 (5th Cir. 1982). Instead, courts look to the totality of the circumstances to determine whether the alleged facts state a claim for cruel and unusual work conditions. Id.; Jackson v. Cain, 864 F.2d 1235, 1245 (5th Cir. 1989). West proffered declarations from several inmates who stated not only that Berry had a reputation for his reckless operation of forklifts but also that they had witnessed Berry engaging in such behavior. The declarants further stated that Blair had frequently been in the bus repair area while Berry was operating a forklift recklessly.

4

Taken as true, this evidence could be sufficient to establish that Blair should have known about Berry's alleged reckless operation of forklifts and was negligent for not addressing the issue before West was injured. However, a prisoner's claim that establishes no more than negligence must fail. See Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (affirming the district court's determination that the inmate's "allegations amounted to a claim of negligence, and therefore did not raise a non-frivolous constitutional claim"); see also Hare v. City of Corinth, 74 F.3d 633, 649 (5th Cir. 1996)(en banc) ("Deliberate indifference, *i.e.*, the subjective intent to cause harm, cannot be inferred from a prison guard's failure to act reasonably."). Thus, although Blair may have been negligent for failing to reassign or better train Berry, this inaction does not demonstrate criminal recklessness. See McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)("'[S]ubjective recklessness as used in the criminal law' is the appropriate test for deliberate indifference.")(quoting Farmer, 511 U.S. at 838-40). As such, West failed to demonstrate that his injuries were the result of Blair's deliberate indifference, and the district court did not erroneously dismiss his claim.

III.    Johnson's Claims

Johnson argues that the district court erred in dismissing his retaliation claim as frivolous. He alleged several facts in support of his claim. Johnson began by stating that during his twenty-two year incarceration, he filed numerous administrative grievances and lawsuits against Gary, Scott, Brock, and others regarding conditions at Ellis Unit and prison officials' misconduct. Indeed, a civil rights suit that he initially filed in 1983 against Brock and others was ultimately settled in the mid-1990's, awarding Johnson monetary damages. According to Johnson, former Ellis Unit Senior Warden, M.B. Thaler ("Thaler"), expressed "animosity" toward him because of the various grievances he filed.

5

Johnson contends that, when Morgan replaced Thaler in Spring 1999, Morgan learned of his myriad grievances and lawsuits and began harboring animosity against him as well.

Johnson asserts that in June 1999, after Morgan appointed Brock as Building Major, the duties of which include making housing assignments for general population prisoners, he sent Brock a letter complaining of excessive noise and official misconduct at Ellis Unit. One month later, when the top bunk in Johnson's cell became vacant, Brock transferred a prisoner to fill the vacancy. Johnson alleges that Brock deliberately assigned a young, disruptive, raucous prisoner, A. Jimenez ("Jimenez"), to his cell in retaliation against him and for the purpose of harassing him. Johnson claims that after Jimenez's arrival his personal property began to disappear and that one of Jimenez's friends, inmate McHaney, began visiting the cell in violation of prison rules. Johnson asserts that McHaney threatened him with physical injury if he reported these violations.

Nonetheless, throughout July and August, Johnson filed administrative grievances and sent letters to Morgan, Scott, and Gary complaining of the inappropriate cell assignment, McHaney's visits and threats, and Brock's alleged retaliation. Although Johnson stated that he did not feel he was in imminent danger, he ultimately spoke with Captain Wedgworth ("Wedgworth") about his situation. Wedgworth agreed to investigate the matter, but informed Johnson that he would have to consult with Brock to determine whether Johnson would have to be moved pending investigation. Johnson asserts that Brock immediately ordered that he be put in a transient cell and believes that Brock may have induced McHaney to threaten him to provide a pretext for this action.

Johnson appeared before the Ellis Unit Classification Committee on August 16, 1999, recounted the previously discussed events, and requested that Jimenez be moved. He also wrote the committee, as a preemptive measure, objecting to any transfer as retaliatory. Nonetheless, on August

6

18th, Johnson was transferred from Ellis Unit to Eastham Unit, which has more restrictive conditions of confinement and a purported reputation for being a "dumping ground" for undesirable minimum and medium security prisoners. Johnson filed an administrative grievance and wrote to Gary regarding his allegedly retaliatory transfer to Eastham Unit.

Under Fifth Circuit precedent, prison officials may not retaliate against or harass an inmate for exercising his right to access courts or for complaining about an official's misconduct. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995); Gibbs v. King, 779 F.2d 1040, 1046 (5th Cir. 1986). However, because "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties," claims of retaliation must be viewed with skepticism and scrutinized carefully. Woods, 60 F.3d at 1166. To state a valid claim for retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998); Johnson, 110 F.3d at 310. The inmate plaintiff must also be prepared to establish that, but for the retaliatory motive, the event about which he complains would not have occurred. Woods, 60 F.3d at 1166 ("This places a significant burden on the inmate."). "'Such motivation may be established by alleging "a chronology of events from which retaliation may plausibly be inferred.'" Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996) (quoting Woods, 60 F.3d at 1166).

Although a prisoner has no constitutional right to be housed in a particular facility, id. (citing Olim v. Wakinekona, 461 U.S. 238, 244-45, 103 S. Ct. 1741, 1745, 75 L. Ed. 2d 813 (1983)), a transfer cannot be made in retaliation against the exercise of constitutional rights. Jackson, 864 F.2d

7

at 1248 n.3. Thus, Johnson's retaliation claims are not based on an indisputably meritless legal theory and are not frivolous. See Berry, 192 F.3d at 507.

However, we agree with the district court that the factual assertions underlying Johnson's retaliation claim, namely, that a younger, more disruptive, raucous inmate was assigned to fill the vacancy in his cell and not moved, that Johnson was placed in a transient cell pending the investigation of his report of McHaney's attempts to intimidate him, and that he was transferred to Eastham Unit, do not create an inference of retaliation. Though Jimenez may not have been a compatible roomate for Johnson, Johnson averred neither that Jimenez posed a threat to his safety nor that Jimenez impeded his ability to function reasonably in the prison environment. Moreover, Johnson claims that Jimenez was assigned to his cell in retaliation for his having filed suit against Brock and other officials, but Brock made the instant assignment more than fifteen years after Johnson first filed suit against him and other officials. Based on the chronology of events relating to Jimenez's assignment to Johnson's cell, we cannot plausibly infer that but for the alleged retaliatory motive the complained of incidents would not have occurred. As such, Johnson failed to state a valid claim of retaliation, and the district court did not err by dismissing his complaint.[2]

IV.     Remaining Claims

West and Johnson argue that the district court erroneously failed to formally grant their motion for leave to file an "amended original amended complaint." This argument is unavailing on

---

[2] We note that dismissal for failure to state a claim counts as a strike against Johnson for the purposes of 28 U.S.C. § 1915(g), just as a dismissal for frivolity would have. See In re Crittenden, 143 F.3d 919, 920 n.1 (5th Cir. 1998) (concluding that inmate Crittendon had "been placed on this Court's 'three strikes' list as he has had at least three suits filed in the federal courts dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted").

8

appeal, however, because they acknowledge that "it is clear that the court addressed the allegations [contained therein] . . . ." Because the district court fully considered the substantive claims in Johnson's amended original amended complaint, we find that it did not err by failing to formally grant the appellants' motion for leave to file said complaint.

West and Johnson also contend that the district court erred by denying their Rule 59(e) motion to alter or amend its judgment. Although this court applies less stringent standards to pro se litigants than to parties represented by counsel and liberally construes their briefs, pro se litigants must still brief the issues and reasonably comply with the requirements of Fed. R. App. P. 28. Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995). Therefore, the appellees' mere assertion that the district court erred by denying their Rule 59(e) motion is insufficient to preserve this issue for appeal. See Brinkmann v. Abner, 813 F.2d 744, 748 (5th Cir. 1987) (reasoning that a "one-page recitation of familiar rules . . . without even the slightest identification of any error in" the district judge's legal analysis or application of the rules is tantamount to abandonment of the issues on appeal). We therefore pretermit this issue.

Finally, West and Johnson assert that although the district court ordered the clerk to return to them any funds in excess of the $150.00 filing fee, only $5.83 of the $40.83 withdrawn has been returned. They contend that the district court abused its discretion by neglecting to insure that the clerk returned the excess fees as ordered.

The district court was within its authority to order that the excess fees associated with this litigation be returned to the proper prison accounts. See Prows v. Kastner, 842 F.2d 138, 140 (5th Cir. 1988) (reasoning that "Section 1915(a) is intended to provide access to federal courts for plaintiffs who lack financial resources to pay any or part of the statutory filing costs"). Moreover,

9

our court has found that denying indigent litigants a refund of filing fees may violate their right of access to the courts. Foster v. City of Lake Jackson, 28 F.3d 425, 429 (5ᵗʰ Cir. 1994). By affirmatively ordering the return of West's and Johonson's filing fees, the district court complied with this court's precedent and the underlying intent of § 1915. The record reveals that the district court entered its refund judgment on June 12, 2000, but is devoid of any evidence that the appellants thereafter either notified the district court that the clerk had not fully complied with its order or requested that the court remedy this asserted noncompliance. As such, we find unavailing the appellants' argument that the district court apparently abused its discretion by not sua sponte assuming the responsibility to follow up with the clerk's office to insure that the appellants received their refund.

CONCLUSION

For the reasons stated herein, we AFFIRM the district court's dismissal of West's and Johnson's complaints.

AFFIRMED.