Pat **CANTERINO** a/k/a Pat Williams, et al., Plaintiffs–Appellees,

The United States of America, Plaintiff–Intervenor,

v.

George **WILSON**, et al., Defendants–Appellants.

No. 82–5498.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 23, 1986.
Decided March 10, 1989.

---

Barbara W. Jones (argued), Linda G. Cooper, Corrections Cabinet, Office of Gen. Counsel, Frankfort, Ky., for defendants-appellants.

Leslie W. Abramson, University of Louisville Law School, Louisville, Ky., David A. Friedman (argued), Eleanor F. Martin, Claudia Wright, Nat. Prison Project, Washington, D.C., for plaintiffs-appellees.

Patricia G. Littlefield, U.S. Dept. of Justice–Sp. Litigation, Washington, D.C., for plaintiff-intervenor.

Before WELLFORD, MILBURN, and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Defendant-appellants, the Secretary of the Corrections Cabinet of Kentucky and others involved with the administration of the Kentucky prison system, appeal to this court from a decision of the United States District Court for the Western District of Kentucky enjoining enforcement of Kentucky Revised Statutes § 197.140, finding that the statute violates the due process and equal protection clauses of the United States Constitution. U.S. Const. amends. V & XIV. For the reasons hereinafter stated, we reverse and vacate the decision of the district court, and remand to the district court.

I

On October 31, 1980, Pat Canterino, an inmate of the Kentucky Correctional Institute for Women, filed a class action suit on behalf of all prisoners who are or will be confined in the institution at Peewee Valley, Kentucky (hereinafter "the prison"), against appellant Wilson and others, challenging the conditions of their confinement at the prison. Appellant Wilson was named a defendant in his capacity as Secretary of the Corrections Cabinet of Kentucky. Canterino claimed that the totality of prison conditions were beneath the standards of human decency, inflicted unnecessary suffering on prisoners, created an environment threatening the mental and physical well-being of the prisoners, and resulted in the deterioration of prisoners confined there. The complaint further alleged that the classification system was inadequate because there were too many prisoners and too few jobs for them, and that existing rehabilitation, educational, vocational and recreational programs were inadequate. The complaint charged that the prisoners' rights under the United States and Kentucky Constitutions, Kentucky Revised Statutes, and Kentucky ad-

ministrative regulations had been and were continuing to be violated. Plaintiff-appellee sought injunctive relief on behalf of the class.

On August 27, 1981, plaintiff-appellee filed an amended complaint charging a violation of section 504 of the Rehabilitation Act of 1973 in addition to the charges in the original complaint. On February 24, 1982, a second amended complaint was filed, adding Raymond A. Barber, superintendent of the Kentucky Department of Education, in his official capacity, as an additional defendant. This complaint also alleged violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq., and Title II of the Vocational Educational Amendments of 1976, 20 U.S.C. § 2301 et seq. On March 10, 1982, a motion to intervene was filed by the United States Department of Justice, along with a complaint charging that the vocational programs and jobs available to inmates at the institution constituted a denial of equal protection pursuant to Title IX of the Civil Rights Act of 1964 and the United States Constitution. This motion was granted on March 11, 1982.

The trial was held in April 1982. Thereafter, the court entered a memorandum opinion and order enjoining enforcement of Kentucky Revised Statute § 197.140, emphasizing that it was basing its decision on state law grounds as an exercise of its pendent jurisdiction. 546 F.Supp. 174 (W.D.Ky.1982). The court made factual findings with respect to various aspects of the prison operation. These findings provide the framework of the present appeal.

The prison houses prisoners who have been assigned to various security catego-ries (minimum, medium and maximum). It is located on 276 acres and contains many buildings. The prison houses all female offenders in Kentucky. Since 1977, the prison has allocated institutional privileges on the bases of behavior and seniority (the "Levels System"). The prison has a separate classification system which assigns each inmate to a housing area within the institution, a work or study placement, and a security level of minimum, medium or maximum. The classification decision is made by prison officials according to Kentucky Revised Statutes ("KRS") § 197.065.[1]

The Levels System is a behavioral modification program that regulates virtually every dimension of an inmate's life. Level 1 is for all new inmates with restrictions on normal privileges. These inmates are restricted with respect to visits, telephone calls, hours of retiring at night, clothes and personal grooming and living habits. A certain minimum amount of time is spent at each level before promotion to a higher-numbered level. At each level, inmates are evaluated on their work assignments and general conduct. The Levels System was originally voluntary, and was instituted before the classification system. It is unique to the women's prison. Disciplinary reports under the Levels System can result in sanctions such as the loss of good time, and can affect other custodial decisions.

The Corrections Cabinet offers vocational education and training programs to prisoners, including vocational school courses within the institutions, prison industries and farms, on-the-job training and community based programs. However, KRS § 197.140 lists six categories of inmates in all Kentucky prisons who are ineligible for

1. KRS § 197.065 states:

Classification and segregation of prisoners in penal institutions; transfer between institutions: (1) The Secretary shall be charged with the duty of classifying all prisoners and with the duty of segregating said prisoners in all of the state penal institutions and reformatories according to their past records, the probability of their being rehabilitated, the influence such prisoners might exert upon fellow prisoners, and for any other purpose that the Secretary, in his discretion, may deem suffi-cient for the discipline of the prisoners in any institution or reformatory, and for the rehabilitation of any of said prisoners. (2) For the purposes of carrying out subsection (1) of this section, the Secretary is vested with the authority to direct and compel the transfer of any prisoner from any penal institution or reformatory, irrespective of the order of the court committing said prisoner to any one (1) institution or reformatory.

Ky.Stat.Ann. § 197.065 (Baldwin 1985).

*work release* programs.[2] Under the Corrections Cabinet's administrative regulations, *outside study* programs are also prohibited for these categories of inmates. Furthermore, the internal regulations also direct the Cabinet to apply this statute in determining an inmate's security classification in that prisoners who have committed the enumerated felonies are denied minimum security status. The district court found that this internal regulation conflicts with KRS § 439.600, which permits limited release for study programs, medical furloughs, ordinary furloughs, and volunteer programs if a prisoner is trustworthy.[3]

The district court found that the classification process was intended to function separately from the Levels System, but that under the Cabinet's present practices, the two are totally confused. Proceeding under its pendent jurisdiction, the court stated that:

> Defendant's interpretation of K.R.S. 197.140 extends its restrictions to areas beyond those enumerated by the legislature. This overbroad interpretation violates plaintiff's right under K.R.S. 439.-600 to be considered for study release solely on the basis of trustworthiness.... Eligibility for minimum security status, and community programs under K.R.S. 439.600, may be limited only by valid correctional concerns related to participation in those programs. To the extent the Department shows any of the statutory restrictions of K.R.S. 197.140 have a reasonable relationship to commu-

nity minimum status, it may apply those restrictions to that status.

546 F.Supp. 174, 216–17.

The district court also found that the: low number of inmates classified as community minimum [was] attributable in part to a sense of maternalism and overprotectiveness, which is evident in a number of areas at the institution. This is illustrated by the rule banning communication with male inmates which reflects an exaggerated fear that any social contact would inevitably lead to pregnancy.... Women are viewed as children who cannot be trusted. This attitude has a definite impact on the classification process at the institution.

*Id.* at 205. The lower court directed that there be a revision of the Cabinet's administrative regulation in its order.

In addition to its other holdings, and also at issue in this appeal, the district court enjoined enforcement of KRS § 197.140, holding that it had been employed by the defendants as a "blanket prohibition against community minimum security status" in contravention of KRS § 439.600 (study program conditioned only on trustworthiness) and KRS § 197.065 (the classification system generally applicable to all inmates). The court did so based explicitly on state law, explaining that KRS § 197.140 was intended to govern the outside work program only, and not the study program or the general classification system.

On August 10, 1982, the district court granted a stay of the enforcement of the

---

2. KRS § 197.140 states:
   Prisoners not eligible to be worked outside prison.... No prisoner who is serving a sentence for rape, attempted rape, or who has escaped or attempted to escape from an adult correctional institution within the past five (5) years, or who has been convicted of armed robbery or armed assault with intent to rob where any injury has been inflicted upon any other person during the commission of the offense, shall be worked or released for work outside of the walls of the prison. No prisoner who has been sentenced to life imprisonment shall be worked or released for work outside of the walls of the prison until he has actually served within the walls of the prison for at least one (1) year of his sentence.

Ky.Rev.Stat.Ann. § 197.140 (Baldwin 1972).

3. KRS § 439.600 states in relevant part:
   Extension of limits of place of confinement; conditions.... (1) The secretary, or such person as said secretary delegates may extend the limits of the place of confinement of a prisoner as to whom there is reasonable cause to believe will honor his trust, by authorizing him, under prescribed conditions, to: * * * (c) participate in an educational training program in the community on a voluntary basis while continuing as a prisoner of the institution or facility to which he is committed or confined....

Ky.Rev.Stat.Ann. § 439.600 (Baldwin 1985).

order with respect to the Correction Cabinet's administration of KRS § 197.140, pending appeal. On August 2, 1982, a Notice of Appeal on this case was filed. On March 5, 1984, appellants filed a motion to alter or amend the court's decision with respect to KRS § 197.140, based on the decision in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). On July 11, 1984, the district court granted appellants' motion and modified the order to prohibit the enforcement of KRS § 197.140 on the grounds of both the due process and equal protection clauses of the United States Constitution. U.S. Const. amends. V & XIV. The court held that it had been wrong to base its decision on state law alone, and to refrain from reaching the constitutional issues. This result followed from the fact that *Pennhurst* held that claims that state officers violated state law are barred by the eleventh amendment from being heard in federal court under pendent jurisdiction. 465 U.S. at 919, 104 S.Ct. at 121.

Thus, the issue on this appeal is whether the district court erroneously characterized the administrative interpretation of KRS § 197.140 as a violation of due process and equal protection.

## II

In this appeal, plaintiff-appellees claim that because KRS § 197.140 has been interpreted by the prison to prevent both their reclassification to minimum custody and their consideration for study and work release, their liberty interest under the Constitution is violated. In considering such a claim, we must first consider whether the plaintiffs have a protected liberty interest in a particular classification, or in the study and/or work programs. *Bills v. Henderson,* 631 F.2d 1287, 1291 (6th Cir. 1980).

The current law of liberty interests in prison regulations and statutes and policies is delineated in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) and its progeny. In *Hewitt v. Helms,* following a riot in the Pennsylvania state prison, the appellee was removed from his cell and placed in administrative segregation. The next day he received a notice of misconduct. Five days after the transfer to segregation the prisoner was absolved of responsibility by the Prison Hearing Committee. However, a Prison Review Committee concluded that he should remain in segregation because he was a threat to other prisoners. Based on a second misconduct report, the Hearing Committee found him guilty and confined him to administrative segregation for six months. The Supreme Court held that the appellee was entitled to due process, but concluded that the informal procedures used were adequate. 459 U.S. at 472–77, 103 S.Ct. at 871–74.

The *Hewitt* Court said very clearly that there are two related inquiries in a determination of one's entitlement to a liberty interest. The first is the existence of restrictions on the discretion of prison officials, and the second is the content of the policies, regulations and statutes of the prison authorities. In the words of the Court:

> ... on balance we are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates [to negative actions by prison officials] demands a conclusion that the State has created a protected liberty interest.

459 U.S. 460 at 472, 103 S.Ct. 864 at 871. The "specific substantive predicates" in *Hewitt* were required findings regarding the need for control and the threat of a serious disturbance. *Ibid.*

The *Hewitt* principles were reaffirmed by the Supreme Court in *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). In *Greenholtz,* the Court held that a liberty interest had been created by a statute which required the Board of Parole to grant parole unless it found one of four enumerated exigencies to be present. *Id.* at 11–12, 99 S.Ct. at 2105–06. However, the Court was careful to note that the "*possibility* of parole provides no more than a mere hope that the benefit will be obtained," and that such possibility alone

does *not* create a liberty interest. *Id.* at 11, 99 S.Ct. at 2105. A liberty interest in the prison context must be based upon a specific substantive predicate which restricts the discretion of prison officials which, without such restriction, is presumed to be extremely broad. *Hewitt,* 459 U.S. at 467, 103 S.Ct. at 869. *See also Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (Hawaii's prison regulations do not restrict the discretion of prison officials and thus no liberty interest was created by those regulations); *Beard v. Livesay,* 798 F.2d 874, 877 (6th Cir.1986) (same); *Mahfouz v. Lockhart,* 826 F.2d 791, 792 (8th Cir.1987) (same); *Francis v. Fox,* 838 F.2d 1147, 1149 (11th Cir.1988).

In applying this analysis to the instant case, we note that the Corrections Cabinet has always had complete discretion to decide whether or not to grant study release. Assignment to minimum security did not eliminate the necessity of a determination of trustworthiness, as suggested by appellees in their argument before this court, nor did it automatically require granting study release. The Cabinet's discretion is restrained only by the required finding of trustworthiness, and, in the absence of mandatory language, inmates have no reasonable expectation that such a finding will be made or that release will otherwise be found appropriate. Ky.Rev.Stat. Ann. § 439.600. Further, the same can be said of the work release program and the classification system: neither requires the granting of privileges nor establishes "specific substantive predicates" before the exercise of discretion adverse to a prisoner. Although the work program statute requires the exclusion of those who have committed certain felonies, it does not mandate work release for those not convicted of such crimes, nor does it eliminate official discretion in excluding others for reasons other than the commission of one of the enumerated felonies. Ky.Rev.Stat. Ann. § 197.140. The classification statute is expressly drawn to commit decisions regarding classification to the Secretary. Ky. Rev.Stat.Ann. § 197.065. Hence, the Kentucky laws in question establish no liberty interest.

*Bills v. Henderson,* 631 F.2d 1287 (6th Cir.1980), does not support appellees' argument to the contrary. In *Bills,* this court held that a liberty interest was created because the administrative regulations included "limited restrictions on prison officials' discretion" to take actions adverse to a prisoner. *Bills,* 631 F.2d at 1293. In *Bills,* transfers to administrative segregation were committed to the *limited* discretion of the prison officials in that a prisoner *could be* segregated *only* for certain specified reasons. *Id.* at 1292. We noted there that such limited discretion "create[s] a very different situation from the unbridled discretion which had been found to exist" in two earlier Supreme Court cases, *Meachum v. Fano,* 427 U.S. 215, 223–24, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (no liberty interest in prisoners not being transferred to other prisons), and *Montayne v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976) (same). *Bills,* 631 F.2d at 1293. Instead, we reasoned, *Bills* was like the more recent *Enomoto v. Wright,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978), *aff'g* 462 F.Supp. 397 (N.D.Cal.1976), in which statutes and regulations restricted the discretion of prison officials by mandating that segregation be accomplished only when the safety and security of inmates and the institution so required. *Ibid.* Thus, *Bills* is entirely consistent with our decision here.

In two cases involving similar facts and alleged entitlements to work release programs, the Courts of Appeals for the Eleventh and Eighth Circuits reached the same result as that reached here. Those courts found that administrative regulations containing specific criteria for eligibility for work release did not create a liberty interest in work release because of the absence of mandatory or restrictive language in the regulations. *Francis v. Fox,* 838 F.2d 1147 (11th Cir.1988); *Mahfouz v. Lockhart,* 826 F.2d 791 (8th Cir.1987). We find these cases to be indistinguishable from ours in that the words that restricted eligibility were not substantive predicates limiting

the exercise of discretion adverse to a prisoner.

For these reasons, we reverse the holding of the district court, finding that the plaintiffs have not been granted a liberty interest in study and work release programs, or in the application of the classification system. Thus, there has been no violation of due process in the present case.

### III

In this appeal, appellees have pressed the claim that the classification system as applied to them denies them the benefit of the study release program in violation of their right to equal protection under the fifth and fourteenth amendments. Their claims consist of bare bones pleadings and virtually the same facts that were developed in the district court opinion pertaining to conditions of confinement. We reject this supposed denial of equal educational and vocational opportunities for two reasons: (1) the district court found no denial of educational opportunities; and (2) there was no proof of gender-based discrimination. Thus, we present only a brief analysis of this issue.

A claim of sex discrimination under the equal protection clause requires a finding of gender-based discrimination. *Geduldig v. Aiello,* 417 U.S. 484, 494, 94 S.Ct. 2485, 2491, 41 L.Ed.2d 256 (1974). Appellees have failed to prove that the denial of study and work release to members of their class is gender-based discrimination on its face, because both men and women are included in the class of people who may be denied study and work release. Appellees' allegations of unequal opportunities for vocational and study release are vague and conclusory and unsupported by the facts. Thus, the court cannot discern whether the appellees are claiming that more women are unfairly classified and therefore unfairly denied these opportunities, or whether more women in this institution have committed serious crimes than the men who are confined to similar institutions. Therefore, we cannot find that plaintiffs have established the proof necessary to shift the burden of proof to the

appellants to show a legitimate justification for this supposed discrimination. *Mississippi University for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed. 2d 1090 (1982).

Similarly, the alleged proof of injury with respect to both the denial of educational programs and the denial of lower security classifications consists of the district court's findings with respect to conditions of confinement, which are irrelevant to the claims regarding work and study release. In other words, although the district judge found that the educational and occupational programs tended to benefit male inmates more than female inmates, plaintiffs have shown no causal relation between that finding and the finding that the Levels System has been confused with the general classification system.

No evidence has been presented that the Levels System seriously prejudiced the classification system against women and resulted in a denial of vocational and study opportunities in the fashion claimed by appellees. *See Glover v. Johnson,* 510 F.Supp. 1019 (E.D.Mich.1979), *aff'd sub nom. Johnson v. Cornish,* 774 F.2d 1161 (6th Cir.1985). Appellees have failed to prove any discrimination, or any injury resulting from the supposed discrimination. *Carey v. Piphus,* 435 U.S. 247, 255, 98 S.Ct. 1042, 1048, 55 L.Ed.2d 252 (1978). Thus, their equal protection claim must fail.

### IV

Because the trial judge, in his revised opinion, explained that his original decision was implicitly based on federal constitutional grounds, we find no need to discuss the relevance of *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), at great length. The trial judge specifically stated that *Pennhurst* did not control this case because "the injunction does not compel state officials to comply with state law. Rather, the claims asserted by the plaintiffs arise under federal constitutional analysis...." As the district court stated,

"this court has jurisdiction to enjoin defendants' actions based on federal constitutional claims." (citing *Pennhurst*, 465 U.S. at 109 n. 17, 104 S.Ct. at 912 n. 17). Thus, *Pennhurst* simply is inapposite, and there is no doubt as to the propriety of the exercise of federal court jurisdiction over the federal constitutional claims alleged in this case.

V

Based on the above, we VACATE the decision of the district court, finding that no constitutional violation was proven in this case. We REMAND for further proceedings consistent with this opinion.