**Ronnie SMITH, Plaintiff–Appellant,**

v.

**Margarett BINGHAM, et al.,
Defendants–Appellees.**

**No. 89–4547
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 18, 1990.

Ronnie Smith, Pearl, Miss., pro se.

Mike Moore, Atty. Gen., James F. Steel, Jackson, Miss., for defendants-appellees.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Ronnie Smith, an inmate at the Rankin County Correctional Facility (RCCF), alleges that the prison authorities violated 42 U.S.C. § 1983, the fourteenth amendment, and 20 U.S.C. § 1681 by not allowing him to attend vocational training with the female inmates of RCCF. After a bench trial on the merits, the district court found that Smith failed to prove a claim of sex discrimination under the equal protection clause. Finding no reversible error, we affirm.

I.

Appellant Ronnie Smith was a prisoner in the Mississippi State Penitentiary at Parchman. The Mississippi Department of Corrections transferred Smith to the Rankin County Correctional Facility (RCCF), in partial settlement of separate civil litigation. RCCF serves as a prison for female offenders within the Mississippi Depart-

ment of Corrections. Male prisoners are assigned to RCCF to provide support services such as maintenance and food preparation. Smith was originally assigned to RCCF as a cook, but was reassigned to the law library as a writ writer.

RCCF offers several educational programs for its inmates. Junior college classes and general equivalency diploma (GED) classes are offered at night and are open to both male and female prisoners. During the day, RCCF provides vocational classes for its female inmates. Although there is no written policy excluding male inmates from the vocational classes, the prison authorities have not allowed male inmates to enroll in these classes.

Smith attempted to enroll in the vocational classes at RCCF, but RCCF officials denied his request. Smith was given the option of transferring back to Parchman to enroll in the vocational programs available there. Smith chose to remain at RCCF. Smith filed numerous requests and grievances with various prison officials seeking admission to the vocational program at RCCF. He was unsuccessful and as a result filed this suit.

The district court held a bench trial and found that Smith failed to prove that he was the victim of gender-based discrimination. Smith filed a timely notice of appeal. The district court permitted Smith to proceed in forma pauperis.

## II.

Appellant alleges that the correctional policies of the Mississippi Department of Corrections violate the equal protection clause of the fourteenth amendment. Specifically, he maintains that prohibiting male prisoners from enrolling in vocational classes at the female prison constitutes gender discrimination. The prison's policy facially classifies on the basis of gender: female prisoners incarcerated at RCCF may enroll in vocational classes, while male prisoners at RCCF may not. The appellees assert that male prisoners cannot be allowed to enroll in the vocational training program at RCCF for two reasons. First, the male prisoners are housed at RCCF to

provide support services and are therefore occupied full-time during the day. If the male prisoners were allowed to enroll in vocational training during the day, they would not be able to fulfill their support service duties. Second, allowing male prisoners to enroll in vocational training would create security problems.

In reaching its decision, the district court did not engage in equal protection clause analysis. The district court held that Smith had not made out a claim of sex discrimination because he had the opportunity to enroll in vocational training at Parchman, and he was not entitled to any particular housing or work classification. The district court cited *Canterino v. Wilson*, 869 F.2d 948, 954 (6th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 539, 107 L.Ed.2d 536 (1989), to support its finding that Smith suffered no gender-based discrimination. *Canterino* held that women prisoners did not sufficiently allege that they received unequal vocational and study opportunities to support a claim of gender-based discrimination. 869 F.2d at 954. From its reasoning, we infer that the district court found no facial equal protection violation here because Smith was not wholly deprived of vocational training opportunity: he simply had to return to Parchman to utilize it. This reasoning is certainly plausible. Nevertheless, we shall assume *arguendo* that this alternative does not sufficiently answer Smith's claim.

The Mississippi Department of Corrections policy that prohibits male prisoners from enrolling in vocational classes at the female prison facially classifies on the basis of gender. Supreme Court decisions interpreting the equal protection guarantees "establish that the party seeking to uphold a statute that classifies individuals on the basis of their gender must carry the burden of showing an 'exceedingly persuasive justification' for the classification." *Mississippi University for Women v. Hogan*, 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982) (quoting *Kirchberg v. Feenstra*, 450 U.S. 455, 461, 101 S.Ct. 1195, 1199, 67 L.Ed.2d 428 (1981); *Personnel Admin. v. Feeney*, 442 U.S. 256,

273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979)). This burden is met by showing that the qualification serves " 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.' " *Id.*, 458 U.S. at 723, 102 S.Ct. at 3336 (quoting *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107 (1980)).

In reviewing the appellant's discrimination claim we cannot disregard the special difficulties that arise in the prison context. Our inquiry must acknowledge the importance of the state's interest in the prison setting. We must accord wide ranging deference to the decisions of prison administrators and permit them to make difficult judgments concerning prison operations. *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir.1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160, *rev'd on other grounds sub nom. Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). A prisoner does not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system. *Id.* In the present case, we need not decide the applicable level of scrutiny for an equal protection claim in a prison setting. Even under the test applied to challenge gender-based distinctions outside of the prison setting, we find no merit in Smith's claim that he has been denied equal protection of the laws.[1]

The state contends that its policy of excluding male prisoners from the female vocational classes is necessary to maintain prison security. Security is a central concern of prison officials. *Tubwell v. Griffith*, 742 F.2d 250, 252 (5th Cir.1984) (citing *Bell v. Wolfish*, 441 U.S. 520, 546–47, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)). The state's interest in prison security is clearly an important governmental objective, and the record reveals that the prison's policy is directly and substantially related to furthering that interest.

The purpose of requiring a substantial relationship between the government's objective and the means employed to achieve that objective is "to assure that the validity of a classification is determined through reasoned analysis rather than through the mechanical application of traditional, often inaccurate, assumptions about the proper roles of men and women." *Mississippi University for Women v. Hogan*, 458 U.S. at 727, 102 S.Ct. at 3337. The state's interest in prison security is not based on underlying assumptions about the roles of men and women. The record reveals that the area in which the vocational classes are taught is guarded by two security officers in a roving patrol.[2] The state contends that it would need additional guards to secure the area if vocational classes were co-correctional.[3] The state bases this contention on the size and design of the area in which the vocational classes are taught, and their prior experience with co-correc-

---

**1.** *Compare Madyun v. Franzen*, 704 F.2d 954 (7th Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983) (state prison regulations that required female prisoners to be frisked only by female security guards while male prisoners were subject to being frisked by female security guards did not violate equal protection clause of the fourteenth amendment) *with Pitts v. Thornburgh*, 866 F.2d 1450 (D.C.Cir. 1989) (incarcerating female offenders farther from D.C. than male offenders were incarcerated did not violate equal protection). In *Madyun*, the Seventh Circuit did not articulate the applicable level of scrutiny for an equal protection claim in a prison setting. *See Madyun*, 704 F.2d at 962. The court acknowledged the state's legitimate security interest in affording different treatment to male and female prisoners, but held that even under the heightened scrutiny applied in a non-prison setting the appellant's claim was without merit. *Id.* In *Pitts*, the District of Columbia Circuit held that heightened scrutiny, which is traditionally applied to gender discrimination claims, was appropriate in the prison setting because the appellant's claim did not implicate prison security or daily prison management concerns, which might justify a lesser standard. 866 F.2d at 1454.

**2.** On direct examination, Ms. Susan Cox, the Director of the RCCF vocational programs, testified that RCCF has approximately 100 inmates enrolled in vocational classes in two buildings. 2 R. 68.

**3.** Ms. Cox testified that co-correctional vocational classes would require one security officer per classroom. 2 R. 68.

tional vocational classes at Parchman.[4] Allowing male prisoners to enroll in the vocational classes at the female prison clearly poses a security risk. Therefore, we hold that a substantial relationship exists between the state's important security interest and its policy of excluding male prisoners from the vocational classes.

Finding no reversible error, we AFFIRM the judgment of the district court.

---

**4.** Although the GED and junior college classes are co-correctional, they do not create security problems because off-duty security officers voluntarily attend these classes and receive credit. Additionally, these classes are offered in the evening and thus do not interfere with the male inmates' work assignments.