Fecteau, J.
The plaintiff, Richard Cepulonis, is presently incarcerated at the Massachusetts Correctional Institution Cedar Junction in Walpole, Massachusetts (MCI-CJ). Plaintiff filed this action pro se on February 11, 2002 against Michael T. Maloney as Commissioner of the Department of Correction. In this action the plaintiff seeks a declaratoiy judgment for an Interpretation of G.L.c. 124, §1, which requires the defendant to “establish, maintain and administer programs of rehabilitation.” The plaintiff also requests a writ of mandamus ordering the defendant to cany out the duties imposed under the statute. The plaintiff also claims that the restriction on contact visitation at MCI-CJ violates his right to equal protection. The plaintiff moved to amend his complaint on August 12, 2002 in order to establish a class certification on behalf of all inmates at MCI-CJ. This Court (Fecteau, J.) denied that motion on September 4, 2002.
This matter is before the Court on defendant’s motion to dismiss under Mass.R.Civ.P. 12(b)(6) or, in the alternative, motion for summaiy judgment under Mass.R.Civ.P. 56. The Court has reviewed the affidavit of the plaintiff and the affidavit of Sherry Elliott filed with the defendant’s motion. Therefore, the defendant’s motion to dismiss must be denied and the Court will consider the defendant’s motion for summary judgment.

BACKGROUND

The undisputed facts viewed in the light most favorable to the non-moving party are as follows.
The plaintiff is an inmate presently incarcerated at MCI-CJ. The plaintiff has a rather notorious history with the Department of Correction beginning with his initial incarceration at MCI-Norfolk in 1972. In June of 1973, the plaintiff escaped while on a twelve-hour furlough. He was apprehended in New York City in September of 1973, but not before committing an armed robbery. After his return to MCI-Norfolk, the plaintiff worked his way down to a lower level of custody and was eventually sent to MCI-Shirley, a minimum security facility. However, in September of 1987 the plaintiff again managed to escape. This time he was able to evade capture for nine years. In October of 1996, the plaintiff was returned to the Department of Correction custody and sent to MCI-CJ, a level six maximum security facility. He is presently serving a sentence of between 61 and 87 years for a number of offenses including the armed robbery he committed during his first escape. Although he has sought to be transferred to a medium security facility, he has yet to be reclassified as the Department of Correction continues to believe that the plaintiff is a security risk.
The plaintiff contends that there are far fewer educational programs available to inmates at MCI-CJ than are presently available to inmates at the Souza-Baranowski Correctional Center (“SBCC”). Although at one time MCI-CJ offered a GED program and college level courses, both have been discontinued, either due to budget cuts or the ending of grants. In addition, about half of the educational programming presently available to inmates at MCI-CJ is geared toward those inmates scheduled for release within one year.[1] The plaintiff contends that he is being denied equal protection because educational programs are not offered at MCI-CJ to the same level that they are offered at SBCC. Plaintiff contends that as an inmate in a level six maximum security facility, he is similarly situated with inmates at SBCC, also a level six maximum security facility, and that, as a result of the alleged inequity in educational programming, he is being denied equal protection of the law.[2] Additionally, the plaintiff argues that the no contact visitation order at MCI-CJ is a violation of equal protection whereas inmates similarly situated at SBCC are allowed contact visitation.

DISCUSSION

I. Standard of Review
Summary judgment shall be granted where there are no genuine issues as to any material fact and *684 where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991).
II.Declaratory Relief
The plaintiff is seeking a declaratory judgment to determine whether the defendant is required to provide educational and vocational programs at MCI-CJ on parity with those offered at SBCC.[3] The plaintiff may seek such an equitable remedy in order to determine whether the defendant is fulfilling the mandate of the legislature imposed by G.L.c. 124, §1 and G.L.c. 127, §48. See G.L.c. 231A, §2; Henderson v. Commissioner of Barnstable County, 49 Mass.App.Ct. 455, 458 (2000) (declaratory judgment proper means for challenging interpretation of a statute and construction of regulations); Nelson v. Commissioner of Correction, 390 Mass. 379, 388 (1983) (Department of Correction disciplinary regulations subject to judicial review through an action for declaratory judgment).
III.Exhaustion of Administrative Remedies
Before an inmate may file a claim in the Superior Court, he is first required to exhaust all available administrative remedies. G.L.c. 127, §38E. There are four exceptions to this requirement. The inmate may bring an action directly to the Superior Court if (1) there has been no final resolution of the grievance within 180 days from the date of the filing of the grievance; (2) exigent circumstances exist that would jeopardize the life or health of the inmate; (3) the inmate files a petition for a writ of habeas corpus; or (4) any action that seeks equitable relief.
Although the plaintiff has not followed the formal grievance procedures as prescribed by law, in this instance he need not do so. As a claim for equitable relief, a declaratory judgment is exempted from the requirements of G.L.c. 127, §38E. Therefore, this Court is authorized to hear the claim without plaintiff first resorting to the institutional grievance procedures.
IV.Equal Protection Claim
Plaintiff contends that the defendant has a statutory mandate to provide an educational and/or vocational program to the inmates at MCI-CJ to the same extent as is provided to the inmates at SBCC.[4] The plaintiff complains that SBCC, a level six maximum security facility on par with MCI-CJ offers a myriad of educational and vocational programs not currently available at MCI-CJ.[5] Plaintiff is seeking a declaratory judgment asking this Court for an interpretation of G.L.c. 124, §1. In addition, plaintiff is seeking a writ of mandamus that the Commissioner be directed to implement a more extensive educational/vocational/rehabilitatton program at MCI-CJ.
Plaintiff further contends that he is being denied the right of equal protection, alleging that the programming offered to inmates at SBCC is not equally available to inmates at MCI-CJ. He further alleges that as an inmate in a level six maximum security institution he is similarly situated to inmates at SBCC and as such is being denied equal access to educational/vocational/rehabilitation opportunities.
It is well settled law that a prison inmate does not have a constitutional right to an educational, vocational or rehabilitation program. Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990); Garza v. Miller, 688 F.2d 480, 485-86 (7th Cir. 1982). However, a right to an entitlement in a program may be created by statute. Here, the Legislature has instructed the Commissioner to “establish, maintain and administer programs of rehabilitation including . . . education, training and employment of persons committed to the custody of the Department [of Correction].” G.L.c. 124, § 1 (e). The language of the statute mandating that the Commissioner establish such programming creates more than a “mere hope or expectancy” of an educational program; it creates an actual entitlement in the program. Association for Reduction of Violence v. Hall, 558 F.Sup. 661, 663-64 (D.Mass. 1983), vacated and remanded on other grounds, 734 F.2d 63 (1st Cir. 1984). Once the determination has been made to offer such a program the administration of that program must be fair and impartial with regard to all inmates. Wishon v. Gammon, 978 F.2d at 450; Burnette v. Phelps, 621 F.Sup. 1157, 1159 (M.D.La. 1985) (no federal constitutional right to participate in a prison program, but where such a program is offered, each prisoner should have equal access). Although each inmate must have sufficient opportunity to participate in the program, he is not thereby entitled to the opportunity of his choice, or to pursue the educational and vocational opportunities at all times during the course of his incarceration. Association for Reduction of Violence v. Hall, 558 F.Sup. at 664; State of New Hampshire v. Evans, 127 N.H. 501 (1985) (upholding discretion of prison warden to determine content and availability of legislatively mandated educational program that required the Commissioner of the Department of Correction to adopt rules and standards for the implementation of an educational program).
*685 In order to prove an equal protection violation the plaintiff must show that the difference in availability of educational/vocational/rehabilitation programming is without justifiable grounds and that the program is being administered unfairly with an intent to discriminate. Douglas v. Debruyn, 936 F.Sup. 572, 576 (S.D.Ind. 1996). The plaintiff is not part of a suspect or protected class, nor can he sustain that he is being denied a fundamental right. Therefore, his equal protection claim must be analyzed in the context of whether the current inequities of the program are rationally related to a legitimate government purpose. Wishon v. Gammon, 978 F.2d at 450.
Whether the Commissioner has fulfilled his obligations at MCI-CJ must be determined in light of the special security concerns that exist at that institution. Presently, the programs available at MCI-CJ include transitional type programs for inmates approaching their release dates, a fathers’ program, a substance abuse program and potentially a janitorial skills program. Although both MCI-CJ and SBCC are level six maximum security facilities, MCI-CJ has a more restrictive environment based on greater security concerns. These higher level restrictions, resulting from an inmate assault on a correctional officer, have adversely impacted the volunteer base previously available to assist in implementing the program. In addition, state budget cuts have further adversely impacted the program.
However, inconsistency in the operation of a prison is not enough to constitute the denial of equal protection. Douglas v. Debruyn, 936 F.Sup. at 572. The plaintiff must also show that the differences are the result of discrimination or are otherwise arbitrary or irrational. Laaman v. Helgemoe, 437 F.Sup. 269, 318 (D.N.H. 1977). The plaintiff has not demonstrated to this Court that the Commissioner has administered the educational/vocational/rehabilitation program in a discriminatoiy or arbitrary manner. The programming in place at MCI-CJ is reflective of both the reduction in financial resources and the lack of available volunteers.[6] More importantly, the programming decisions have been affected by the necessary security restrictions imposed as a result of an assault on a correctional officer. Decisions by prison administrators in the area of safely and security must be given wide-ranging deference by this Court. Smith v. Bingham, 914 F.2d at 742; Hayes v. Cuyler, 475 F.Sup. 1347, 1350 (E.D.Pa. 1979). Further, it is not necessary that the defendant offer the same type of or an equally comprehensive program as that available at SBCC if the program as a whole is being administered in an objective and rational manner.
The plaintiff therefore is unable to sustain the claim of a violation of his right of equal protection. The defendant has effectively carried out the functions dictated under G.L.c. 124, § 1(e) requiring that a program be implemented that offers educational, vocational and rehabilitation programs to inmates within the Department of Correction.
V. Contact Visitation
The plaintiff next contends that his right to equal protection has been violated because inmates at MCI-CJ are prohibited from having contact visits with outsiders while inmates at SBCC are under no such restriction. Contact visits were eliminated at MCI-CJ in 1995 after the violent attack on a correctional officer.
Each institution within the prison system is likely to have unique security concerns. Decisions by prison officials of how to run their particular institution and how to maintain a semblance of order, security and safety for all persons either housed or employed within the prison walls, should be regarded with great deference by the judiciary. Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Matthews v. Rakiey, 38 Mass.App.Ct. 490, 496 (1995) (noting that federal due process does not guarantee prison inmates the right to “unfettered visitation, let alone contact visitation,” citing Kentucky Dept. of Correction v. Thompson, 490 U.S. 454, 460 (1989)); Jones v. North Carolina Prisoners’ Labor Union, Inc., 433 U.S. 119, 132-33 (1977) (inmates’ attempts to form a union implicated First Amendment right of association but that right must be subjugated to prison officials’ decisions regarding internal security).
This Court may not substitute its judgment for that of prison officials, who are in a better position and have more experience in matters of institutional security, in determining whether contact visitation poses a security threat at MCI-CJ. Feeley v. Sampson, 570 F.2d 364, 373 (1st Cir. 1978) (finding that limitation on contact visitation for detainees based on security concerns within the decisional authority of prison officials). Rather, the role of this Court is to determine whether the imposition of a no contact visitation order is a reasonable, non-arbitraiy rule prison administrators and is based on legitimate security concerns. Id. If so, then this Court must accord that decision a wide-ranging deference.
MCI-CJ is a level six maximum security institution with a history of violent security breaches. Prison administrators charged with the ever-increasing difficulties of maintaining the safety and security within the institution should not be second-guessed by the courts. Bell v. Wolfish, 441 U.S. at 531. The order for non-contact visitation bears a rational relationship to a legitimate penological objective, i.e., the maintenance of a reasonable means of securing the safety of the correctional officers at MCI-CJ.
VI. Conclusion
For the foregoing reasons, it is hereby ORDERED that defendant’s motion for summary judgment be GRANTED.

The defendant does not state what constitutes the other 50% of educational programming that is offered at the insti *686 tution.

The plaintiff does not state whether his equal protection claim is based on state or federal constitutional law. Regardless, our analysis of an equal protection claim is the same under either federal or state law. Dickerson v. Attorney General, 396 Mass. 740, 743 (1986).

G.L.c. 124, §l(e) provides that the Commissioner “establish, maintain and administer programs of rehabilitation, including but not limited to educational, training and employment, of persons committed to the custody of the department, designed as far as practicable to prepare and assist each such person to assume the responsibilities and exercise the rights of a citizen of the commonwealth.”

Defendant argues that the plaintiff is asking for an educatlonal/vocational program that meets his specific needs. But that is a misconstruction of what the plaintiff is alleging. Plaintiff seeks a declaratory judgment that the Commissioner is unfairly and inequitably administering the legislatively mandated program. While the plaintiff has attained a level of education far exceeding most of the inmate population, his argument is not that there are no programs suitable for his needs, but rather, that there are no programs presently in place at MCI-CJ comparable to those being offered at SBCC. In essence, defendant admits to this allegation acknowledging that only limited programs for soon to be released inmates are presently available at MCI-CJ, and that the GED program and college level classes are no longer offered.

The SBCC offers adult basic education designed for improving “basic functioning skills” in reading, math and writing, English as a second language, a Pre-GED program, and literacy and special education in reading. Vocational programs include barber school, computer skills, culinary arts and building maintenance.

Neither the plaintiff nor the defendant has offered this Court information as to whether there are other alternative means for the inmates to access educational or vocational opportunities, i.e., whether programs are available to the inmates either via the internet or through correspondence courses. Noris there any discussion by either party of whether the library has sufficient materials that could be utilized to offer some type of education or training.